**Attorneys for Plaintiff:**

Peter G. Loftus, Esquire
The LOFTUS LAW FIRM, P.C.
P.O. Box V, 1207 N. Abington Road
Waverly, PA  18471
(570)586-8604

**Attorneys for Defendant(s):**

Kevin T. Fogerty, Esquire
Mill Run Office Center
1275 Glenlivet Drive, Suite 150
Allentown, PA  18106
(610)366-0950

Donald H. Brobst, Esquire
Rosenn, Jenkins & Greenwald, LLP
15 South Franklin Street
Wilkes Barre, PA  18711-0075
(570)826-5655

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH R. REISINGER,** | :CIVIL ACTION – LAW |
| | : |
| Plaintiff, | : |
| | :JURY TRIAL DEMANDED |
| v. | : |
| | : |
| **THE CITY OF WILKES BARRE;** | : |
| **THOMAS LEIGHTON;** | : |
| **FRANCES KRATZ;** | : (Judge Conaboy) |
| **GREGORY BARROUK;** | : |
| **MICHAEL KERMEC and** | : |
| **THE CRADLE COMPANY II, INC.** | : |
| | : |
| Defendants. | :     No. 3:09-CV-210 |

613810.1

# JOINT CASE MANAGEMENT PLAN

Instructions: In many cases there will be more parties in the action than there are spaces provided in this form. Each party shall provide all requested information. If the space on this form is not sufficient, the form should be retyped or additional pages attached.

No party may submit a separate Case Management Plan. Disagreements among parties with respect to any of the matters below shall set be set forth in the appropriate section.

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.
(Revised 4/97)

**1.0    Principal Issues**

**1.10**- *Separately for each party, please give a statement summarizing this case*:

*By plaintiff(s)*:

The Plaintiff, as of January 1st, 2005, was the owner of twenty six (26) rental properties in and about the City of Wilkes Barre which were collateral for twenty nine (29) notes and twenty six (26) mortgages.  The Defendant Cadle purchased notes of the Plaintiff on the properties in October of 2004.

Cadle is a predatory creditor who acquires notes from banks and then brutalizes the individual creditors, and Cadle has been barred from conducting business activities in the State of Massachusetts because of this.

In October of 2005, Cadle attempted to improperly seize the rents from the tenants of the 26 properties, by contacting the tenants and alleging that the Plaintiff was in violation of the terms of the notes and mortgages.

Because of the above, the Plaintiff filed a petition requesting a preliminary injunction to order Cadle to cease improperly interfering with the Plaintiff's ownership of the 26 properties, which injunction the Court granted.  During the discovery process related to the above petition, the Plaintiff discovered that Cadle intended to call both Mayor Leighton and Kratz as witnesses against the Plaintiff. Cadle, having been unsuccessful in its prior attempts to improperly seized the rents from the tenants, then filed 26 foreclosure complaints in May against the 26 properties. Cadle filed the above even though the Plaintiff was then in compliance

with all of his payment obligations in regard to the notes, and therefore no basis for foreclosures existed.

After the above filing, Cadle retained Mayor Leighton as its real estate broker, to do an appraisal of the 26 properties. Cadle, rather than simply continuing to collect the monthly debt service payments, etc. in regard to the notes, decided, contrary to the terms of the notes, to attempt to secure a substantial profit now if it could seize and sell the 26 properties, in violation of the notes. Also, if Cadle was successful in its attempt to foreclose on the 26 properties, and then sell same, Mayor Leighton, Cadle's real estate broker, stood to potentially gain a substantial amount of real estate commissions.

In October of 2006, after the Plaintiff filed an answer to the foreclosure complaints, raising numerous questions about Cadle's rights to foreclose, Cadle then filed a motion for a preliminary injunction before Judge Lokuta, because none of Cadle's prior improper efforts to seize the rents were successful. In a hearing in regard to Cadle's preliminary injunction request, the Defendant Kratz falsely testified against the Plaintiff in an attempt to criticize the maintenance policies of the Plaintiff. After a hearing, Judge Lokuta, without any proper basis, granted Cadle the preliminary injunction it had requested, which precluded the Plaintiff from collecting the rents in the future from the 26 properties.

The Plaintiff, in response to Judge Lokuta's order, then filed a Notice of Appeal, and a Motion for a Stay Order, with the Pennsylvania Superior Court, which Court granted the Stay Order on January 18, 2007, because of the strong likelihood the Plaintiff would be successful in having Judge Lokuta's order dismissed. However, after Judge Lokuta's order on December 13, 2006, because of Cadle's numerous prior failures in attempting to seize the rent collections, Kermec then began working diligently to establish and maintain a very close relationship with each of the tenants of the 26 Properties, to secure the receipt of rent from each of the tenants in the future.

Kermec also attempted to minimize to the extent possible any future contact the tenants of the 26 properties had with the Plaintiff's rental office. The granting of the Stay Order by the Superior Court totally suspended the effects of Judge Lokuta's December 13, 2006 order, the Stay Order now mandating that the Plaintiff resume collecting all of the rents from the tenants of the 26 Properties, and to continue to manage the 26 Properties. By implication, the Stay Order required Cadle to cease and desist any future involvement with the tenants in the 26 Properties. However, after the Stay Order of January 18, 2007, Kermec, authorized by Cadle, intentionally violated the Superior Court's Stay Order by continuing to take all steps to continue to collect the rents from the Plaintiff's former tenants, in an attempt to preserve whatever benefit Cadle had gained from December 13, 2006 until January 18, 2007.

Further, as detailed herein, after the Stay Order, there were a series of improper property inspections and improper forced evacuations of the Plaintiff's office location, starting on February 7th, 2007, until April 24, 2007, a period of 77 days.

The corrupt reason for the series of illegal forced closures of the Plaintiff's office location was to preclude the Plaintiff from being able to comply with the Superior Court's Stay Order, said improper office closures precluding the Plaintiff from being able to resume the management of his 26 properties. The failure of the Plaintiff, because of the acts of, and the conspiracy by, all of the Defendants, to be able to resume management of his 26 properties was the reason for the Plaintiff ultimately losing the appeal of Judge Lokuta's order. Those forced illegal office closures were required by Kratz, Barrouk, and Mayor Leighton, in conjunction with Kermec, Fogerty and Cadle, all in violation of the Building Code of the City of Wilkes-Barre.

On February 7, 2007, the first of a series of improper condemnations and forced evacuation of the Plaintiff's office location occurred by Kratz and Barrouk inspecting, and then requiring immediate forced evacuation, by the Plaintiff and the Plaintiff's office staff, of the Plaintiff's office building at 444 South Franklin Street, or be subject to immediate arrest. The forced closure caused the office to remain closed from February 7, 2007, to February 12, 2007.

The second improper inspection, condemnation and forced evacuation of the Plaintiff's office location occurred on April 3, 2007, at which time Kratz and Barrouk again condemned the Plaintiff's office building, and ordered the Plaintiff and the Plaintiff's office staff to then vacate same, or be subject to immediate arrest. The above forced improper closing was for a period of April 3, 2007, until April 24, 2007 (during tax season), the period of the closure being extended by a series of improperly required proposed curative actions ordered by Kratz. Because of the above second forced closure of the Plaintiff's office location, the Plaintiff relocated his office location to his apartment at 442 South Franklin Street, on April 6, to provide continued services for his clients during tax season.

The third improper forced closure and evacuation of the Plaintiff's above office location, at 442 South Franklin Street, occurred by order of Kratz on April 16, 2007 and that building has remained vacant to the current date. After the above three forced closures, the Plaintiff then moved his office location the next day, on April 17, 2007, to an apartment in his building at 448 South Franklin Street, and within three hours, Kratz and Barrouk then condemned that building also, and required the immediate forced evacuation by both the Plaintiff, and the Plaintiff's office staff, or be subject to immediate arrest.

Finally, the Plaintiff then moved his office location to 62-64 West Ross Street, the next day, April 18, 2007, and within five hours, Kratz and Barrouk went to that

building to cause the Plaintiff's staff to be required to immediately vacate same, or be subject to immediate arrest.

All the above forced closures and condemnations, etc. were in violation of the Building Code of the City of Wilkes-Barre. For example, the reasons Kratz expressed for the forced closure of 442 South Franklin Street have been totally disputed by the Assistant Fire Chief of the City of Wilkes-Barre, a licensed plumbing contractor, and the Plaintiff's architect. The Defendants, Kratz and Barrouk, had failed to properly cite the Plaintiff and allow him to take an appeal from said citations before condemning the above series of buildings and forcing the immediate evacuations, thereby eliminating the ability to appeal same.

The Defendants' conduct in forcing the closing of the Plaintiff's office building and the other above properties precluded the Plaintiff from conducting his occupation during his busiest time of the year, tax season, and also virtually eliminated his ability to properly manage his twenty six (26) properties and collect the rents, as required by the Superior Court's Stay Order.

*By defendant(s) City of Wilkes-Barre, Thomas Leighton, Francis Kratz and Gregory Barrouk (collectively, the "City" Defendants:*

Plaintiff has instituted this action under the Civil Rights Act, 42 U.S.C. §1983, alleging the Defendants violated his constitutional rights under the Fourth Amendment, his right to procedural and substantive due process, his right to equal protection, and his right to freedom of speech. He also avers pendent state law claims against the Defendants for invasion of privacy, interference with contractual relationships, civil conspiracy and intentional infliction of emotional distress. Plaintiff was the owner of numerous buildings in the City of Wilkes-Barre. The building at 444-446 South Franklin Street was posted and closed by the Wilkes-Barre City Department of Health for violations of the City Code after inspection by the Wilkes-Barre Community Action Team ("CAT"). That property was to remain vacated until the property owner requested reinspection of the property after he had abated the violations. On February 23, 2007 the City Health Department and the Defendant Building Code Official Kratz did a follow up inspection because of a complaint received from employees in the Plaintiff's office located there. At that time, the inspection showed the health violations had been abated. However, Building Code Official Kratz found numerous building violations and therefore the property remained posted and closed. On April 3, 2007 the Building Code Official and the Health Department inspected the premises at 444-446 South Franklin Street again. Those premises were still in violation of the City Building Code and hence remained posted and closed.

Subsequently, Plaintiff was prevented from moving his office from 444-446 South Franklin Street into 448 South Franklin Street because there was no electricity to the building and because that property was not zoned for commercial use. The City Defendants did not post and close 442 South Franklin Street as alleged in the Complaint. Moreover, the City Defendants did not require the Plaintiff to vacate the Plaintiff's office location at 62-64 West Ross Street as alleged in the Complaint.

At all times, the members of the CAT lawfully entered onto the Plaintiff's premises to conduct inspections of the Plaintiff's properties. The properties which were posted and closed as noted above were done so for proper reasons – namely, violations of the City Code. Plaintiff never appealed the posting and closure of those units although he could have done so.

At no time were the City Defendants acting in concert with Defendant Cadle ("Cadle") or Defendant Michael Kermec ("Kermec"), an employee of Cadle. Cadle and Kermec had nothing to do with the citing of the Plaintiff's properties for building code and health code violations.

The Plaintiff's Complaint erroneously alleges that Mayor Thomas Leighton was a Real Estate Broker for the Defendant Cadle. Mayor Leighton was never a Real Estate Broker for Cadle; he was retained by Cadle to do appraisals on the Plaintiff's properties on which Cadle had mortgages; that had nothing to do with the City CAT citing certain of Plaintiff's properties for violations of the City Code.

Therefore, there has been no violation of Plaintiff's constitutional rights, and the Plaintiff has no pendent state law claims against the Defendants.

*By Defendants, Michael Kermec and The Cadle Company, II:*

This case is just another in a series of frivolous and harassing lawsuits brought by Joseph R. Reisinger, Esq., the others having been asserted in --and still pending at-- the Luzerne County Court of Common Pleas, Civil Action Nos. 2005-12124, 2006-11479, 2007-5254, and 2008-13317.

The true relevant facts are straightforward and simple, and not as alleged by Reisinger in this latest lawsuit.

In September, 2004, Cadle bought from Nova Savings Bank in Philadelphia a package consisting of 28 loans which had previously been made to Reisinger by several banks in the Luzerne County area. These included 28 separate Notes, 27 of which were secured by Mortgages against Real Estate (one of which was a second mortgage, all the rest being first mortgage liens), the other being an unsecured loan for which there was a co-signor, Patrick Dougherty, Esquire, another attorney in Luzerne County.

613810.1

In April, 2005, Reisinger filed a Chapter 7 Bankruptcy Petition --which is still pending-- in the United States Bankruptcy Court for the , captioned as ***In re Joseph R. Reisinger*** - Docket No. 05-52172 (Bankr. Ct. M.D. PA). In that bankruptcy case, Reisinger filed, under oath and penalty of imprisonment, Schedules and Statement of Financial Affairs, in which he acknowledged there wasn't a penny of equity --because of the substantial outstanding real estate taxes, liens for municipal services and unpaid delinquent Mortgages-- in any of his real estate holdings (in excess of 50 properties), including all 26 properties against which Cadle held Mortgages.

Because of Reisinger's numerous breaches under the Notes and Mortgages held by Cadle, on November 29, 2005, Cadle gave Reisinger formal written notice of those defaults, which included failure to make payments owed under the Mortgages, failure to pay real estate taxes -- going back to the mid-1990s, when Reisinger had filed a previous failed Chapter 11 bankruptcy --, failure to maintain the properties, failure to pay for lienable municipal services and utilities. It is undisputed Reisinger has never cured any of those defaults.

As a consequence, in October, 2005, Cadle obtained stay relief from the Bankruptcy Court -- to which Reisinger and the Chapter 7 Trustee consented, because there was no equity in any of the properties --, so Cadle could foreclose on its Mortgages against those properties. In the late spring and summer of 2006, Cadle instituted 25 Mortgage foreclosure actions, which Reisinger has done everything possible to delay and obstruct, despite having no meaningful defenses.

Moreover, while Reisinger was trying to delay Cadle's mortgage foreclosure cases -- at the same time he continued to collect rent from these properties, notwithstanding that he was in bankruptcy and those monies belonged to either (i) the Chapter 7 Trustee, or (ii) Cadle, as the secured creditor. As a consequence, in September, 2006, Cadle filed an equity action, captioned as ***The Cadle Company II, Inc. v. Joseph R. Reisinger, Tina Bolen and Tina Randazzo*** - Civil Action No. 10356-2006 (C. C. P. Luzerne), seeking a Court Order declaring Cadle's entitlement to collect rents from the tenants at these properties. Cadle also requested entry of a preliminary injunction compelling tenants to pay those rents to Cadle, In connection therewith, a hearing was held in the Luzerne County Court of Common Pleas on October 30 and November 3, 2006, at the conclusion of which an Order was entered, by the Honorable Ann H. Lokuta, granting Cadle's Motion, directing that the rents be paid to Cadle as mortgagee in possession, subject to Cadle posting an appropriate Bond, which it did. Reisinger appealed that Order, and while he initially obtained a stay --based on misrepresentations which he had made in his stay papers filed with the Superior Court--, the Superior Court eventually affirmed Judge Lokuta's ruling, which became final when no further appeals were taken.

In light of these circumstances, the current status of these 26 properties is that Cadle has been collecting rent and paying property expenses, and is attempting to liquidate the properties in satisfaction of the more than $1.5 Million which it is owned on its Mortgages, while at the same time, there are outstanding real estate taxes, interest and penalties exceeding $500,000.00 owed on these properties.

Lastly, Reisinger's allegations about Cadle being a "predatory creditor," which supposedly "brutalizes the individual creditors" [sic; presumably means "debtors"], are sheer fabrications, Reisinger has unsuccessfully alleged for more than three years in the state court litigation.

Similarly, Reisinger's allegations of some improper "connection" between the Mayor of Wilkes-Barre (Thomas Layton), and these properties, is fiction, as all Cadle ever did was continue to use Mr. Layton's real estate firm --which Nova Savings Bank had previously used to obtain appraisals on these properties-- to generate drive-by appraisals, so Cadle could determine the best manner in which to dispose of the properties to receive payment of the monies it is owed. Moreover, Cadle had no participation in the issuance of violation notices by the City of Wilkes-Barre, and the only remaining state law claims brought against it are the same recycled causes of action being pursued by Reisinger against Cadle in the numerous still pending Luzerne County actions.

*The principal <u>factual</u> issues that the parties <u>dispute</u> are*:

       1.11    Did the condition of the Plaintiff's properties violate the Wilkes-Barre City Code so as to justify their posting and closing by the City Health Department and/or Building Code Official?

       1.12    Was there any improper forced evacuation of the Plaintiff from his office location?

       1.13    Did the City Defendants act in concert with Defendant Cadle or Defendant Kermec with respect to the Plaintiff's properties?

       1.14    Did Cadle participate at all in any actions taken by the City Defendants?

       1.15    Has Cadle done anything other than exercise its rights as a creditor, under Notes, Mortgages, Assignments of Rents and Leases and other loan documents, to pursue collection of the substantial monies it is owed by Reisinger?

*The principal <u>factual</u> issues that the parties <u>agree</u> upon are*:

1.16   On April 15, 2005, the Plaintiff, Joseph R. Reisinger, filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Pennsylvania, at **In re Joseph R. Reisinger** - Docket No. 05-52172 (Bankr. Ct. M.D. PA).

1.17.   In the Schedules filed, under oath, by Joseph R. Reisinger in his Chapter 7 bankruptcy case, he stated his position concerning the value of each of the twenty-six (26) properties against which Cadle holds mortgages, and the then-outstanding amount of real estate taxes owed on those properties, and the outstanding amounts owed on mortgages against those properties.

Based on the values, tax amounts and mortgage amounts stated under oath by Joseph R. Reisinger in his Bankruptcy Schedules, there was no equity-- above the debts owed which were liens against those properties-- in any of those properties when he filed for bankruptcy.

1.19   In October, 2005, the Bankruptcy Court, per the Honorable John T. Thomas, entered an Order-- with the consent and approval of Reisinger and the Chapter 7 Trustee, Markian Slobodian, Esquire--, abandoning the twenty-six (26) properties against which Cadle holds mortgages.

1.20   As of November 30, 2006, the records of the Luzerne County Tax Claim Bureau showed that the real estate taxes, interest and penalties owed on the twenty-six (26) Reisinger properties against which Cadle holds mortgages totaled in excess of $500,000.00.

*The principal <u>legal</u> issues that the parties <u>dispute</u> are*:

1.21   Did the Defendants conduct an illegal search and/or seizure of Plaintiff's property in violation of the Fourth Amendment?

1.22   Did the Defendants violate the Plaintiff's right to procedural due process?

1.23 Did the Defendants violate the Plaintiff's right to substantive due process?

1.24 Did the Defendants violate the Plaintiff's First Amendment rights?

1.25 Did the Defendants engage in activity that would constitute an invasion of privacy under Pennsylvania State Tort law?

1.26 Did the Defendants interfere with the contractual relationships of the Plaintiff in a manner that would give rise to a claim for interference with contractual relationships under Pennsylvania law?

1.27 Did the Defendants engage in activity that would give rise to a cause of action of intentional infliction of emotional distress under Pennsylvania law?

1.28 Did the Defendants act in concert in a manner that would give rise to a claim of civil conspiracy under Pennsylvania law?

1.29 Are the Plaintiff's State law claims against the City Defendants barred as untimely given the Plaintiff's failure to give timely notice of the claims to the City as required by Pennsylvania law?

1.30 Has the Plaintiff set forth a violation of a clearly established constitutional right which the individual City Defendants would believe or understand they violated by their conduct, and hence are said individual Defendants entitled to qualified immunity with respect to the civil rights claims?

1.31 Are the individual Defendants entitled to absolute immunity under Pennsylvania Law with respect to the state law claim?

1.32 Whether the individual City Defendants believed in good faith that their conduct was lawful and hence immune from liability?

1.33 Does the City have liability under Section 1983 because it had an unconstitutional policy, practice or custom that violated the Plaintiff's constitutional rights?

1.34 Were any of acts of the Defendants the proximate cause or the cause in fact of any harm suffered by the Plaintiff?

1.35 Whether Plaintiff's claims are barred by the applicable statutes of limitations?

1.36 Whether Plaintiff's claims-- particularly against the City Defendants-- are barred and precluded by Plaintiff's failure to seek enforcement of administrative remedies?

1.37 Whether Plaintiff's claims are barred and precluded by his own material breaches of contract under the loan documents presently held by Cadle?

1.38 Whether Plaintiff's claims against Cadle are barred by the parol evidence rule and the statute of frauds, particularly to the extent they seek introduction of evidence in violation of the clear language of written loan documents, and related amendments?

1.39 Whether Plaintiff's claims against the Cadle Defendants are barred by the gist of the action and/or economic loss doctrines?

1.40 Whether and to what extent any of the claims attempted to be asserted by Reisinger are the property of the Chapter 7 Trustee in his bankruptcy case?

*The principal <u>legal</u> issues that the parties <u>agree</u> upon are*:

1.41 Venue is proper in this case

1.42 The Court has jurisdiction in this matter, but only if Reisinger can establish a right to recover under his federal law claims, as there is no diversity of citizenship.

1.50 *Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue*:

None.

1.60 *Identify any named parties that have not yet been served*:

None.

**1.70** *Identify any additional parties that*:

    plaintiff(s) intends to join:    None.

    defendant(s) intends to join:    None.

**1.80** *Identify any additional claims that*:

    plaintiff(s) intends to add:    None.

    defendant(s) intends to add:    None.

**2.0 Alternative Dispute Resolution ("ADR")**

**2.10** *Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.*

    ADR procedure:   <u>None Agreed Upon –</u>
    Date ADR to be commenced:   <u>N/A</u>
    Date ADR to be completed:   <u>N/A</u>

**2.20** *If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended*:  <u>N/A</u>

**2.30** *If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view*:

The parties agree that at this stage of the case mediation or other ADR procedures would probably not be successful.

**3.0 Consent to Jurisdiction by a Magistrate Judge**

*Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit*:

All parties agree to jurisdiction by a magistrate judge of this court: _____**Y** **X**___**N**

If the parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings: N/A

       _____ Scranton
       _____ Wilkes-Barre
       _____ Harrisburg

**4.0 Disclosures**

**4.100** *Separately for each party, list by name and title/position each person whose identity has been disclosed.*

**4.101** Disclosed by Plaintiff:

| **Name** | **Title/Position** |
|---|---|
| Joseph R. Reisinger | Plaintiff |
| Thomas Leighton | Defendant |
| Frances Kratz | Defendant |
| Gregory Barrouk | Defendant |
| Michael Kermec | Defendant |
| Kevin T. Fogerty | Attorney |
| Judge Lokuta | Former Judge Wilkes Barre |

**4.151** Disclosed by Defendants:

| **Name** | **Title/Position** |
|---|---|
| Thomas Leighton | Mayor of the City of Wilkes-Barre |
| Francis Kratz | Wilkes-Barre City Building Code Official |
| Gregory Barrouk | Assistant to the Mayor and Coordinator Of the City Community Action Team |
| Ed Pesotski | Wilkes-Barre City Environmental Health Inspector |

| | |
|---|---|
| William Sharksnas | Wilkes-Barre City Fire Chief |
| Joe Rodano | Wilkes-Barre City Health Inspector |
| Leon Schuster | Wilkes-Barre City Zoning Officer |
| Laralee Remensnyder | Captain in Wilkes-Barre City Police Dept. |
| Michael Kermec | Account Officer of The Cadle Company II, Inc. |
| Account Officer (identity presently unknown) of Nova Savings Bank (responsible for Reisinger account) | Account Officer/Nova Bank |
| Markian Slobodian, Esquire | Chapter 7 Trustee for Reisinger's bankruptcy case |

**4.200** *Separately for each party, describe by categories the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages*:

    **4.201** *Categories of documents disclosed by plaintiffs*: None at this time. All documents to be disclosed under Fed.R.Civ.P. 26 will be provided within the required time period.

    **4.251** *Categories of documents disclosed by defendants*: All of Reisinger's relevant bankruptcy filings, including schedules and Statement of Financial Affairs, which are a matter of public record, and which Reisinger already has in his possession. Otherwise, any other documents will be disclosed pursuant to the applicable time period under Fed. R. Civ. P. 26.

**4.300** *Additional Documents Disclosures: Separately for each party, describe each additional category of documents that will be disclosed without imposing on other counsel the burden of serving a formal request for production of documents*:

    **4.301** Additional categories of documents that plaintiff will disclose:

All documents in his possession pertaining to his position.

**4.351** Additional categories of documents that defendant will disclose:

All documents required to be disclosed under Federal Rule of Civil Procedure 26 will be provided.

**4.400** *Separately for each party who claims an entitlement to damages or an offset, set forth the computation of damages or of the offset*:

**4.401** plaintiff's calculation of damages: compensatory damages, punitive damages, attorneys' fees, emotional distress

**4.402** defendant's calculation of offset: Cadle is owed more than $1.5 Million secured by liens against Reisinger's real estate.

**4.403** counter claimant/third party claimant's calculation of damages: N/A

**5.0 Motions**

*Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation*:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| Summary Judgment | City Defendants | 1/15/10 |
| Summary Judgment | Cadle and Kermec | 1/15/10 |

**6.0 Discovery**

**6.100** *Briefly describe any discovery that has been completed or is in progress*:

By plaintiff(s): None at this time.

By defendant(s):  None at this time.

**6.200** *Describe any <u>discovery</u> that <u>all parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it*:

The Parties will take depositions, and serve interrogatories and requests for the production of documents on each other to develop the factual basis for the prosecution and defense of the claims in this action. The Parties reserve the right to depose other individuals who may have knowledge of relevant facts

**6.300** *Describe any discovery that one or more parties want(s) to conduct but to which another party objects, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it*:

If Reisinger's attorney attempts to depose Cadle's counsel in this case-- who has represented Cadle in all the prior actions-- Cadle will object, and move for sanctions.

**6.400** *Identify any subject area limitations on discovery that one or more parties would like imposed, at the first stage of or throughout the litigation*:

None at this time.

**6.500** *For each of the following discovery tools, recommend the per-party or per-side limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s))*:

**6.501** depositions (excluding experts) to be taken by:

plaintiff(s):  10          defendant(s):  10

**6.502** interrogatories to be served by:

    plaintiff(s): 50        defendant(s): 50

**6.503** document production request to be served by:

    plaintiff(s): 65        defendant(s): 65

**6.504** requests for admission to be served by:

    plaintiff(s): 40        defendant(s): 40

**6.600** *All discovery commenced in time to be completed by*: 11/30/09

**6.700** *Reports from retained experts due*:

    from plaintiff(s) by:    10/31/09

    from defendant(s) by:    11/30/09

*6.800 Supplementations due*:    12/15/09

**7.0**    **Protective Order**

    **7.1**    *If entry of a protective order is sought, attach to this statement a copy of the proposed order.*

        None at this time.

**7.2** *If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below*: N/A

**8.0 Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority.

Plaintiff:

Joseph R. Reisinger, Esquire
444 South Franklin Street
Wilkes Barre, PA   18702 657

City Defendants:

Brett C. Arruda, Senior Claims Analyst
Darwin
9 Farm Springs Road
Farmington, CT 06032


Cadle and Kermec:

Dan Cadle or Peter Barta
The Cadle Company II, Inc.
100 North Center Street
Newton Falls, OH 44444


**9.0 Scheduling**

**9.1** *This case may be appropriate for trial in approximately*:

   240 Days from the filing of this action in this court

   ___365 Days from the filing of the action in this court

X  15 months from the filing of the action in this court

**9.2**  *Suggested Date for Trial*:    9/14/10

**9.3**  *Suggested Date for the final Pretrial Conference*:   8/16/10

**9.4**  *Final date for joining additional parties*:

  plaintiff(s):  9/30/09

  defendant(s):  10/31/09

**9.5**  *Final date for amending pleadings*:

  plaintiff(s):  9/30/09

  defendant(s):  10/31/09

**9.6**  *All potentially dispositive motions should be filed by*:  1/20/10

**10.0  Other Matters**

*Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.*

  None.

**11.0   Identification of Lead Counsel**

*Identify by name, address, and telephone number lead counsel for each party*:

**Peter G. Loftus, Esquire**
**PO Box V**
**1207 N. Abington Road**
**Waverly, PA 18471**
**Telephone - (570)586-8604**
**Facsimile – (570)586-0380**
**Llfpc@aol.com**

| | |
|---|---|
| Dated:    4/21/09 | /s/ Peter G. Loftus, Esquire    <br>Attorney for Plaintiff |

**Kevin T. Fogerty, Esquire**
**Mill Run Office Center**
**1275 Glenlivet Drive, Suite 150**
**Allentown, PA  18106**
**Telephone - (610)366-0950**
**Facsimile - (610)366-0955**
**kfogerty@fogertylaw.com**

| | |
|---|---|
| Dated:    4/21/09 | /s/ Kevin T. Fogerty, Esquire    <br>Attorney for Defendant(s) |

**Donald H. Brobst, Esquire**
**Rosenn, Jenkins & Greenwald, LLP**
**15 South Franklin Street**
**Wilkes Barre, PA  18711-0075**
**(570) 826-5655 – telephone**
**(570) 706-3409 – facsimile**
**dbrobst@rjglaw.com**
**PA17833**

| | |
|---|---|
| Dated:  4/21/09 | /s/ Donald H. Brobst, Esquire    <br>Attorney for Defendants<br>City of Wilkes-Barre, Thomas Leighton,<br>Francis Kratz and Gregory Barrouk |